1  THOMAS P. O'BRIEN
   United States Attorney
2  ROBB C. ADKINS
   Chief, Santa Ana Office
3  DOUGLAS F. McCORMICK (180415)
   Assistant United States Attorney
4       411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
5       Telephone: (714) 338-3541
        Facsimile: (714) 338-3564
6       E-mail:   doug.mccormick@usdoj.gov

7  STEVEN A. TYRRELL, Chief
   MARK F. MENDELSOHN, Deputy Chief
8  HANK BOND WALTHER, Assistant Chief
   ANDREW GENTIN, Trial Attorney
9  Fraud Section
   Criminal Division, U.S. Department of Justice
10      1400 New York Avenue, N.W.
        Washington, DC 20005
11      Telephone: (202) 353-3551
        Facsimile: (202) 514-0152
12      E-mail:   andrew.gentin@usdoj.gov

13 Attorneys for Plaintiff
   United States of America

14

15              UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                   SOUTHERN DIVISION

18 UNITED STATES OF AMERICA,      )   SA CR 09-00077-JVS
                                  )
19              Plaintiff,        )   GOVERNMENT'S MOTION FOR
                                  )   AMENDMENT OF CONDITIONS OF
20              v.                )   RELEASE FOR DEFENDANTS STUART
                                  )   CARSON, HONG CARSON, AND DAVID
21 STUART CARSON et al.,          )   EDMONDS
                                  )
22              Defendants.       )   [18 U.S.C. § 3145(a)(1)]
                                  )
23 _____    )   **No Hearing Date/Time Set**

24

25      Plaintiff United States of America, by and through its

26 attorneys of record, the United States Department of Justice,

27 Criminal Division, Fraud Section, and the United States Attorney

28 for the Central District of California (collectively, "the

government"), hereby files a motion for amendment of the conditions of release set by Magistrate Judge Marc L. Goldman for defendants Stuart Carson, Hong Carson, and David Edmonds. Specifically, the government seeks to prohibit these defendants from traveling internationally due to the significant amount of prison time they face, the risk of flight, and other circumstances described in the attached Memorandum of Points and Authorities ("Memorandum") and the exhibits thereto.

Based on the facts outlined in the Memorandum, the files and records in this matter, including the respective Pre-Trial Services report for the defendants, as well as any evidence or argument presented at any hearing on this matter, the government requests that the Court amend the conditions of release for defendants Stuart Carson, Hong Carson, and David Edmonds to strike the condition allowing international travel, and limit their travel to the continental United States.

DATED: April 16, 2009            Respectfully submitted,

                                 THOMAS P. O'BRIEN
                                 United States Attorney

                                 ROBB C. ADKINS
                                 Assistant United States Attorney
                                 Chief, Santa Ana Office
                                 DOUGLAS F. McCORMICK
                                 Assistant United States Attorney
                                 Deputy Chief, Santa Ana Office

                                 STEVEN A. TYRRELL, Chief
                                 MARK F. MENDELSOHN, Deputy Chief
                                 HANK BOND WALTHER, Assistant Chief
                                 ANDREW GENTIN, Trial Attorney
                                 Fraud Section, Criminal Division
                                 United States Department of Justice

                                 /s/
                                 _____
                                 DOUGLAS F. McCORMICK
                                 Assistant United States Attorney

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **FACTS**

    A.   <u>Charges Against Defendants</u>

    A federal grand jury returned an indictment on April 8, 2009, charging defendants Stuart Carson ("S. Carson"), Hong "Rose" Carson ("R. Carson"), Paul Cosgrove, David Edmonds, Flavio Ricotti, and Han Yong Kim (collectively, "defendants") with conspiring to secure contracts for their employer, Control Components, Inc. ("CCI"), by paying bribes to officials of foreign state-owned companies as well as officers and employees of foreign and domestic private companies.

    Count one of the indictment charges the defendants with conspiring to violate the Foreign Corrupt Practice Act, 15 U.S.C. § 78dd-2, and the Travel Act, 18 U.S.C. § 1952, from 1998 through 2007.  Specifically, count one alleges that from 2003 through 2007, defendants caused CCI to pay approximately $4.9 million in corrupt payments to foreign officials in violation of the FCPA, and approximately $1.95 million in corrupt payments to officers and employees at private companies in violation of the Travel Act.  All told, CCI made approximately 236 payments in over thirty countries, resulting in net profits to CCI of approximately $46.5 million from the sales related to those corrupt payments.

    Counts two through ten of the indictment allege substantive FCPA violations involving corrupt payments to foreign officials in Korea, China, United Arab Emirates, and Malaysia.  Counts eleven through fifteen allege substantive violations of the Travel Act involving corrupt payments to private companies.  The

final count of the indictment alleges that defendant R. Carson
obstructed an investigation within the jurisdiction of a federal
agency when she destroyed documents relevant to CCI's internal
investigation of the corrupt payments by flushing them down the
toilet of CCI's ladies' room.

The indictment alleges that defendants perpetrated a
business model that encouraged CCI employees to cultivate so-
called "friends-in-camp," or FICs, who were typically officers
and employees of CCI's state-owned and private customers with the
authority either to award contracts to CCI or to influence the
technical specifications of an order in a manner that would favor
CCI.  Indictment, ¶ 18(a).  Either directly or through various
channels, defendants caused CCI to make payments to those FICs at
either state-owned entities or privately-owned companies.  Id.,
¶¶ 18(b)-(e).  By so doing, defendants violated the FCPA and the
Travel Act.  Id., ¶¶ 32-33, 34-35.

The indictment further alleges that each of the defendants
took steps to conceal their corrupt practices.  S. Carson
attempted to halt a 2004 internal audit of commission payments by
CCI's parent company.  Id., ¶ 24.  R. Carson and Edmonds provided
false information to these internal auditors, with Edmonds
creating false invoices to make some of the corrupt commission
payments appear to be legitimate.  Id., ¶¶ 25, 26.  In 2007, R.
Carson and Edmonds again provided false information, this time in
response to the company's internal investigation of corrupt
payments.  Id., ¶ 29.  As he had in 2004, Edmonds tried to make
several FIC payments appear to be legitimate.  Id., ¶ 28.
Finally, when the internal investigators were at CCI in August

2007, R. Carson destroyed documents related to the internal investigation by flushing them down the toilet in CCI's ladies' room. Id., ¶ 30.

B.    Magistrate Judge Authorizes International Travel

On April 9, 2009, the CCI defendants appeared before Magistrate Judge Marc L. Goldman for their initial appearances. While the parties did not differ substantially on the specific bond amounts, the government objected to the requests of defendants S. Carson, R. Carson, and Edmonds to travel internationally for business purposes. Magistrate Judge Goldman ultimately allowed these defendants to travel internationally with certain conditions. Specifically, all three defendants were required to surrender their passports to the Court's Pre-Trial Services ("PTS") and, before traveling internationally, were required to arrange for the return of their passports by notifying PTS in advance of their itineraries. Magistrate Judge Goldman allowed defendants S. Carson and R. Carson to travel internationally up to four times per year and defendant Edmonds to travel internationally once every two months. Finally, Magistrate Judge Goldman prohibited defendants S. Carson and R. Carson from traveling internationally simultaneously, and ordered them to surrender to PTS the passports of their minor children. Defendant Edmonds was also ordered to surrender the passport of his wife when he travels internationally.

**II.   DEFENDANTS S. CARSON, R. CARSON, AND EDMONDS SHOULD NOT BE ALLOWED TO TRAVEL INTERNATIONALLY FOR BUSINESS PURPOSES**

A.   <u>Defendants Are Facing Lengthy Prison Sentences</u>

Any consideration of risk of flight must take into account the potential prison sentence defendants are facing.  In this case, if defendants are convicted of the charged offenses, they will face lengthy prison sentences.  Most significant to this motion, defendant S. Carson would face a sentence of 15 years in prison and a significant fine, and defendants R. Carson and Edmonds would each face sentences of at least 19 years in prison and significant criminal fines.

The applicable sentencing guideline for these defendants is USSG § 2C1.1, which provides for a base offense level of twelve. A two-level enhancement would be applied for multiple corrupt payments (§ 2C1.1(a)(2)) and even more significantly, an enhancement of 22 based on "the benefit received or to be received in return for the payment" (§§ 2C1.1(b)(2), 2B1.1). Accordingly, before any Chapter 3 enhancements for potential aggravating role or obstruction of justice are even considered, defendants face a potential offense level of at least 36, or a guideline range of 188-235 months.[1]

Defendants' age also increases their risk of flight. Defendant S. Carson is 70 years old.  If he is convicted of the charged offenses, he will be facing what amounts to a life sentence in prison.  Defendant R. Carson, who is S. Carson's wife, is 45 years old and facing a sentence of at least 19 years

---

[1]   Defendant S. Carson faces a statutory maximum sentence of 15 years in prison.

4

in prison.  Defendant Edmonds is 56 and is also facing a sentence
of at least 19 years in prison.

B.   <u>Defendants Have Extensive Foreign Ties</u>

Additionally, each of these defendants has extensive foreign
ties.  Each has traveled extensively overseas for business in the
last several years and also has family relationships overseas.
Defendant Edmonds's wife is from Thailand.[2]  Defendant R. Carson
was raised in China, and speaks Mandarin.  The Carsons have at
least considered relocating from the United States to China in
the past.  In an e-mail to IMI's David Nicholas on June 25, 2004,
S. Carson wrote that "[w]e are back in Beijing for more customer
activity and then Wednesday to Shanghai to try to get the
children to consider moving to Shanghai."  Exhibit A.  Notably,
the United States does not have an extradition treaty with China.

C.   <u>Defendants Have the Means to Flee and Live Overseas</u>

Additionally, the fact of defendants' significant assets
increases their likelihood of flight.[3]  During the years of the
alleged conspiracy to make corrupt payments, each of the
defendants was paid large amounts of money by CCI.  From 1998-
2005, defendant S. Carson was paid approximately $3.9 million in
salary and bonus, and defendant R. Carson was paid approximately
$1.5 million during roughly the same time period.  CCI also owes
defendant S. Carson deferred compensation of more than $2

---

[2]   Mrs. Edmonds recently became a United States citizen.
Without diminishing the importance and meaningfulness of that
step, it does not undo the fact that Mrs. Edmonds has ties to a
foreign country.

[3]   The government's information about the net worth of the
Carsons is incomplete, in part because the Carsons declined to
provide PTS with a full accounting of their assets.

million.   The Carsons own a home in San Clemente which is
appraised at approximately $1.5 million.[4]   In addition, public
records show that the Carsons own additional property in Florida.
Defendant Edmonds's assets, while more modest than the Carsons,
are still significant: in addition to his home in Laguna Niguel,
in which he has equity of $200,000-$300,000, defendant Edmonds
has assets of several hundred thousand dollars plus entitlement
to a similar amount of deferred compensation from CCI.

Accordingly, these defendants not only have an incentive to
flee, they have the means to do so.

D.   Defendants Should Not be Allowed to Travel
Internationally to Conduct Business

The defendants claim that they need to travel
internationally to conduct business for their current employer
Valvtechnologies, Inc. ("VTI").   Magistrate Judge Goldman's order
allowing international business travel ignored the similarities
between defendants' current employment and their employment at
CCI during the alleged conspiracy.   The parallels between
defendants' current activities and their former positions at CCI
are striking.   While overseas, PTS has absolutely no ability to
ensure that defendants are not engaging in business practices
that would constitute additional violations of United States law.
As a result, international travel should not be permitted.

Each of the defendants has submitted a letter from Kevin
Hunt, the President of VTI, in support of their requests for

_____

[4]     There is a first trust deed against the San Clemente
property; the loan balance is approximately $200,000.   This
property will be deeded to the Court to secure the Carsons'
respective $500,000 appearance bonds.

international travel.[5]  This letter detailed their job
responsibilities and the requirement that they travel
internationally.  According to the letter, S. Carson presently
serves as VTI's vice-president of sales and marketing, a role
which includes "identifying prospective business opportunities to
VTI and helping with securing such business for VTI."  R. Carson
serves as VTI's director of sales for China and Taiwan, and is
"responsible for marketing VTI valves in China and Taiwan."
Finally, Edmonds is VTI's director of sales for the Americas,
Australia, and Asia (excluding China and Taiwan) and worldwide
customer service, and his role includes "marketing VTI valves in
the Americas, Australia, and Asia (excluding China & Taiwan) and
Customer Service Worldwide."

     Although CCI and VTI are both valve manufacturers, their
products do not compete directly, and there are, in S. Carson's
own words, "many mutual CCI and VTI customers."  See Exhibit C.[6]
Defendants' job responsibilities are for all intents and purposes
identical to the job responsibilities each defendant had at CCI.
The indictment alleges that S. Carson was CCI's CEO from 1989 to
2005, and was the "prime architect" of CCI's FIC sales model,
under which CCI's employees and agents cultivated "special
relationships" with employees of its state-owned and private
customers.  Indictment, ¶ 4.  The indictment alleges that R.
Carson was first CCI's manager and later director of sales for

---

[5]     A copy of the letter is attached as Exhibit B.

[6]     The government understands that CCI manufactures
"control valves," while VTI manufactures "isolation valves."  As
such, their products are in adjacent market segments, and their
respective products are bought by many of the same end-users.

China and Taiwan from 1995 through 2007.  <u>Id.</u>, ¶ 5.  With respect
to Edmonds, the indictment alleges that he was CCI's vice-
president of Worldwide Customer Service from 2000 through 2007, a
position from which he oversaw CCI's replacement parts sales and
the servicing of existing valves.  <u>Id.</u>, ¶ 7.

There is at least some suggestion that defendants have
continued their corrupt business practices following their
respective departures from CCI.  VTI's website (<u>www.valv.com</u>)
contains a list of its distributors; at least four of VTI's
current distributors were terminated by CCI in 2007 for their
involvement in the improper payments.  One of those four
distributors served as CCI's representative in Indonesia and
Singapore during the course of the charged conspiracy, had
numerous direct dealings with defendant Edmonds, and appears to
have made and arranged for several payments to CCI customers on
CCI's behalf.

Moreover, the evidence indicates that defendants have
continued the same business relationships that are involved in
the indictment.  For instance, in December 2005, S. Carson
apparently hosted Gerardo Churion of "Company 2" at his vacation
home in Florida.  In an e-mail dated December 19, 2005, defendant
Cosgrove explained to CCI's new CEO, Ian Whiting, that "Stu . . .
has the company pay for all the holiday expenses (fishing, gas
for his boats, food etc).  Gerardo [Churion] is going [to S.
Carson's home in Florida] at Xmas time and VTI will be picking up

the bill."  Exhibit C.[7]

The continued involvement of S. Carson on behalf of VTI with Gerardo Churion is notable because Overt Act 58 of the indictment involves a corrupt payment in July 2003 to Churion by S. Carson in the form of a "lavish Hawaii vacation" for the purpose of "secur[ing] future Company 2 business."  The evidence will show that Churion was an engineer at Company 2 with the influence to award contracts to CCI.  Together, this e-mail and the list of VTI distributors suggest that defendants are now doing business with many of the same customers with whom they did business on behalf of CCI.

It is reasonable for the Court to infer from these parallels that there is a risk that the corrupt business practices which led to the charges in the indictment may be ongoing.  In light of this risk, it is likewise reasonable for the Court to impose a condition of bond that restricts defendants' travel to the continental United States to ensure that those corrupt business practices do not continue while defendants are on PTS supervision.[8]

_____

[7]  In an earlier e-mail in this thread, S. Carson tells Whiting that "Mr. [Company 2] [presumably a reference to Company 2's Churion] and his family arrive" the day after Christmas. Exhibit C.  These e-mails were written at a time when S. Carson was acting as a director/consultant for VTI, and his wife R. Carson was still employed at CCI.

[8]  Defendants cited Magistrate Judge Goldman to the fact that several other FCPA defendants have been allowed to travel internationally, noting that FCPA defendants in United States v. Head, No. 06-CR-01380 (S.D. Cal. 2006), United States v. Young, No. 07-CR-609 (D. N.J. 2007), and United States v. Jefferson, No. 07-CR-209 (E.D. Va. 2007), were each allowed to travel internationally.  These cases, however, each presented different circumstances.  There is no indication that any of these defendants were traveling for business (1) in the same industry,

9

**III. CONCLUSION**

      The allegations of the indictment, coupled with the potential sentencing consequences, defendant's foreign ties, and the unsettling similarities between their current employment and their work at CCI, warrant against international travel.  The portion of Magistrate Judge Goldman's release order allowing international travel should be stricken.

---

(2) in equivalent positions, and (3) to visit at least some of the same overseas customers.  Additionally, defendants in Head and Young had each pleaded guilty and were cooperating with law enforcement.  Finally, the defendant in Jefferson was a sitting Member of Congress who had potential official travel abroad, causing the district court and the Department of Justice to agree to international travel to avoid a separation of powers issue.